IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANNIE MARIE WAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:17CV192 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Annie Marie Way ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on September 5, 2012, alleging a disability onset date of June 6, 2012. (Tr. at 20, 150-52.)[1] Her claim was denied initially (Tr. at 71-80, 97-100), and that determination was upheld on reconsideration (Tr. at 82-94, 105-12). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 113-14.) Plaintiff attended the subsequent hearing

---

[1] Transcript citations refer to the Administrative Record [Doc. #5].

on August 10, 2015, along with her attorney and an impartial vocational expert. (Tr. at 20.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30), and, on January 6, 2017, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since June 6, 2012, her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> right shoulder rotator cuff tear, status post right rotator cuff repair, and mild to moderate cervical spinal stenosis.

(Tr. at 22.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 24.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work,

> except she can frequently use the right and left upper extremity to operate hand controls; no more than occasional use of the right upper extremity to reach overhead; no more than frequent use of the right and left hand to handle; and no more than frequent use of the right and left upper extremity to finger. [Plaintiff] can frequently balance, stoop, kneel, crouch, and crawl, but should

5

never have exposure to unprotected heights, and only occasional exposure to moving mechanical parts.

(Tr. at 24.) The ALJ found at step four that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform her past relevant work as a cashier/stocker. (Tr. at 29.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 30.)

Plaintiff now raises two challenges to the ALJ's decision. First, she contends that, at step four, the ALJ failed to obtain a reasonable explanation for the apparent conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT") regarding the reaching requirements of Plaintiff's past relevant work as a cashier/stocker. Second, Plaintiff argues that substantial evidence fails to support the ALJ's credibility determination. After a careful review of the record, the Court finds that neither of these contentions merit remand.

### A. Past Relevant Work

"[U]nder the fourth step of the disability inquiry, a claimant will be found 'not disabled' if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82–61); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) ("The two tests [in SSR 82–61] are clearly meant to be disjunctive. If the claimant is found to satisfy either test, then a finding of not disabled is appropriate."). Thus, in undertaking the evaluation at step four, the ALJ may consider whether the plaintiff can perform her past relevant work as she actually performed it, *or* whether the plaintiff can perform her past relevant work as generally performed in the national economy.

6

In the present case, the ALJ concluded, based on the vocational expert's testimony, that Plaintiff is able to perform her past relevant work as a cashier/stocker "as actually and generally performed." (Tr. at 29.) Plaintiff contends that this determination creates an unexplained conflict with the Dictionary of Occupational Titles because the DOT description of the cashier/stocker position includes "frequent reaching," but Plaintiff was limited to "no more than occasional use of the right upper extremity to reach overhead." See DICOT 290.477-014, 1991 WL 672554; see also Pearson v. Colvin, 810 F.3d 204, 209-10 (4th Cir. 2015) ("An expert's testimony that apparently conflicts with the *Dictionary* can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the Dictionary.").

However, as noted above, the ALJ in this case found that Plaintiff could return to her prior position as "actually" performed. In reaching this conclusion, the ALJ relied on Plaintiff's description of the position rather than the DOT. The ALJ explained that Plaintiff "described her job duties at this position as mostly standing at the cash register, but also stocking some alcohol." (Tr. at 29, 45.) In other words, the ALJ described Plaintiff's stocking activities as taking up a minority of her work hours, and certainly less than the 2/3 considered "frequent." This finding is further borne out by Plaintiff's work history report, in which she described the position as

> Spent most of the work day on the cash register scanning mostly alcohol and beer. Sometimes wine and chips. During the slow peak, replenished shelves, clean restrooms, and vacuum floors. Gather up the shopping carts in parking lot. After closing, counted money and filled out report.

7

(Tr. at 213, 219.) When asked about the amount of time she spent on various activities, with respect to "Reach?," Plaintiff indicated a total of only one hour per workday. (Tr. at 213.) This is consistent with Plaintiff's testimony at the hearing before the ALJ. (Tr. at 45.) The vocational expert "read and listened to [Plaintiff's] testimony regarding her work history" and testified that someone with Plaintiff's RFC "would be able to perform [Plaintiff's] prior work as a cashier/stocker." (Tr. at 29, 65.)

As explained above, if a claimant is able to perform her past work as actually *or* as generally performed, a finding of not disabled is appropriate. In addressing this issue, the Court of Appeals for the Fourth Circuit has held that if the ALJ determines that the claimant can return to his past work as actually performed, it is unnecessary to consult the DOT to determine whether the claimant could perform the position as it is generally performed in the national economy:

> we reject the argument that we must consider separately [the claimant's] ability to perform the job of security guard or gate guard as it is generally performed in the national economy. [The claimant] points out that the job of gate guard is classified in the Dictionary of Occupational Titles ("DOT") as a job involving a light level of exertion, which is beyond [the claimant's] capacity. The job of security guard is identified likewise, and both the gate guard and the security guard positions require training periods of between one and three months. However, under the fourth step of the disability inquiry, a claimant will be found "not disabled" if he is capable of performing his past relevant work either as he performed it in the past or as it is generally required by employers in the national economy. SSR 82–61 . . . . There is no dispute that the gate guard position that [the claimant] held was performed at a sedentary level of exertion, and [the claimant] concedes that if his position still existed, he would be able to perform the job. Having found that [the claimant] could perform his job as he did in the past, it is unnecessary to consult the DOT in order to determine whether [the claimant] would be able to perform the position of gate guard as it currently exists in the national economy.

Pass, 65 F.3d at 1207. Similarly in the present case, because the ALJ relied on Plaintiff's own description and the expert's testimony in determining that Plaintiff could return to her past work as actually performed, the alleged conflict between the DOT and the vocational expert's testimony is harmless.

B.    Credibility

Plaintiff next contends that the ALJ failed to properly assess her credibility in assessing her subjective complaints of pain. Plaintiff argues that the ALJ erred in assessing her credibility as specifically prohibited in Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015). Notably, in Mascio, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. (citation omitted). In this case, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 25.) Unlike the language in Mascio, this boilerplate does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

Moreover, Mascio further explains that, even where an ALJ makes a "backwards" credibility determination or utilizes "meaningless boilerplate," "[t]he ALJ's error would be harmless if he properly analyzed credibility elsewhere." Id. In Mascio, the ALJ simply failed to perform such an analysis. In contrast, the ALJ in the present case recounted Plaintiff's testimony and related her reasons for discounting the severity and limiting effects of Plaintiff's

9

impairments based on the record as a whole, and in accordance with the relevant regulations and case law. (See Tr. at 25-28.)

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record." Social Security Ruling 96–7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96–7p"); see also 20 C.F.R. § 404.1529.[4] Toward this end, the Fourth Circuit in Craig v. Chater set out a two-part test for evaluating a claimant's statements about symptoms. 76 F.3d at 594-95. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 20 C.F.R. § 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires him to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

---

[4] Effective March 28, 2016, see Social Security Ruling 16–3p, 2016 WL 1237954 (Mar. 24, 2016), the Social Security Administration superseded SSR 96–7p with Social Security Ruling 16–3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96–7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16–3p, and "because SSR 16–3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4–8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.)." Ivey v. Berryhill, No. 1:16CV1304, 2017 WL 4236558 at *6 n.7 (M.D.N.C. Sept. 22, 2017) (Auld, M.J.).

"According to the regulations, the ALJ 'will not reject [a claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements.'" Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). In short, objective medical evidence of pain is not required at step two of Craig. Id. However, this maxim does not render any available objective evidence irrelevant at that step. Rather, a claimant's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4); see also Hines, 453 F.3d at 565 n.3 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence.").

This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Plaintiff's] daily activities;

(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Accordingly, the Court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

In the present case, as noted above, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 25.) Therefore, Plaintiff's credibility challenge hinges on step two of the Craig analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. §§ 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on objective medical

findings." Lewis, 858 F.3d at 866. However, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work," and "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also Gowans v. Astrue, Civil No. SKG-06-2817, 2008 WL 179479, at *11 (D. Md. Jan. 17, 2008) ("[E]ven though plaintiff's subjective complaints may demonstrate the requisite intensity and severity at step two, if there is significant evidence that contradicts his subjective complaints, the ALJ may, indeed must, consider that evidence in conjunction with the subjective evidence."); McLamb v. Astrue, No. 5:08-CV-305-FL, 2009 WL 2046062, at *9 (E.D.N.C. July 14, 2009); Wetmore v. Astrue, No. 5:09-CV-38, 2009 WL 6449319, at *22 (N.D. W. Va. Oct. 26, 2009).

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence and other evidence contrary to Plaintiff's claims in conjunction with the subjective evidence, and explained that

13

determination in the decision. As noted by the ALJ, Plaintiff testified that she stopped working due to rotator cuff surgery on her right shoulder in June 2012. She reported that it took approximately a year to regain use of her right hand, and that she still can't fully extend her right arm overhead. However, Plaintiff conceded that her mobility increased over time, particularly after beginning physical therapy in September 2012. Plaintiff further testified that, after her right shoulder surgery, she began experiencing neck and back problems as well as headaches and overuse problems with her left shoulder. (Tr. at 25, 49, 51, 52, 56.) In particular, she alleged that, due to chronic neck and back pain, she could only be on her feet for ten minutes before needing to sit and elevate her legs. (Tr. at 61-62.) Plaintiff acknowledged that her pain medications are helpful, but stated that they also cause drowsiness and memory loss. (Tr. at 25, 49-50.) In terms of functional limitations, Plaintiff testified that her left shoulder impairment limits her ability to lift and that she experiences tingling, numbness, and occasional shooting pains in her hands which prevents their constant use. (Tr. at 49, 56-58.)

Contrary to Plaintiff's assertions, the ALJ not only examined each of Plaintiff's impairments at length in her decision, but (1) explained how and why functional limitations from each impairment manifested in Plaintiff's RFC and (2) provided record evidence supporting her findings in accordance with SSR. 96-7p, Craig, 76 F.3d at 595, and 20 C.F.R. § 404.1529(c)(3). First, in terms of Plaintiff's right shoulder pain, the ALJ noted that Plaintiff recovered from arthroscopic rotator cuff repair within the 9-12 month timeframe anticipated by her surgeon (Tr. at 25, 361), and that she was doing well with a reported pain level of 4 out of 10 only one month after surgery (Tr. at 25, 374). Plaintiff's physical therapy sessions and

14

home exercises continued to improve her pain level and range of motion thereafter. (Tr. at 25-26, 274-76, 323, 374.) Moreover, Plaintiff's November 2012 x-rays showed normal spacing of the shoulder joints. (Tr. at 25, 364.) The ALJ explained that, based upon the positive discharge notes from Plaintiff's physical therapist, she found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could frequently crawl and crouch, and could occasionally reach overhead with her right upper extremity. (Tr. at 26.) The discharge notes in question, dated February 2013, showed that Plaintiff had full range of motion in moving her hand to her opposite shoulder, mildly decreased muscle strength, mild limitations with elevating her shoulder and putting her hand behind her back, and moderate limitation putting her hand behind her head. (Tr. at 26, 274.)

The ALJ went on to stress that Plaintiff's shoulder range of motion continued to improve after she completed physical therapy and was near normal in April 2013, as was her cervical range of motion. (Tr. at 26, 354-55.) Plaintiff's right shoulder continued to improve after a second course of physical therapy – this time addressing both shoulders – in May and June of 2013 (Tr. and 26, 420-29), and a June 2013 x-ray again contained normal findings (Tr. at 26, 500). The ALJ acknowledged that Plaintiff began complaining of left shoulder pain in June 2013, but also noted that Plaintiff controlled her pain conservatively with Motrin. (Tr. at 26, 433.) As noted by the ALJ, "[s]uch conservative pain medication does not support a finding that the claimant's pain level was disabling." (Tr. at 26.) X-rays from that time revealed some "left shoulder acromioclavicular joint arthritis," but Plaintiff's physician noted "no symptoms specific to that finding." (Tr. at 26, 437.) A December 2013 x-ray found mild to moderate left shoulder degenerative changes, and Plaintiff received trigger point injections

15

which reduced her pain. (Tr. at 26, 586.) Notably, Plaintiff's more recent treatment records note no tenderness or instability in either of Plaintiff's shoulders, although Plaintiff endorsed pain with left shoulder flexion and abduction beyond 90 degrees and some continued bilateral weakness. (Tr. at 26, 599.) The ALJ found that Plaintiff "positive response to treatment supports the finding" that neither her shoulder impairments nor the pain stemming from them were disabling. (Tr. at 26.)

The ALJ next explained that Plaintiff's complaints of right hand pain, swelling, and tenderness in December 2012 were expected consequences of her rotator cuff surgery, and that these symptoms resolved with her ongoing recovery using conservative measures including Motion and use of a splint. (Tr. at 26-27, 260-63, 344, 354-55, 360, 500.) Nevertheless, the ALJ included RFC limitations relating to Plaintiff's hand use, restricting her to no more than frequent handling, fingering, and use of hand controls. (Tr. at 27.)

The ALJ also expressly considered Plaintiff's complaints of neck pain, but concluded that "this impairment was only mildly to moderately severe." (Tr. at 27.) She stressed that Plaintiff's cervical spine x-rays and MRIs showed only mildly abnormal findings, and that Plaintiff's EMG/nerve conduction studies were normal. (Tr. at 27, 415, 519, 526, 587.) The ALJ also found that Plaintiff's inconsistent use of her pain medication (Robaxin) and muscle relaxant (Flexeril) undermined her contention that her neck pain was as limiting or severe as alleged. (Tr. at 27, 528, 530.) Finally, the ALJ cited Plaintiff's follow-up MRI in March 2015 as evidence that her cervical spine findings remained mild to moderate and did not worsen during the relevant period. (Tr. at 27, 715.) In fact, Plaintiff's treatment notes from March and April 2015 relate that Plaintiff generally was not taking her medications and exhibited no

neck tenderness. (Tr. at 27, 530, 599.) "Based on the mostly mild findings and [Plaintiff's] inconsistent use of pain medication," the ALJ concluded that Plaintiff "maintained the capacity to lift and carry at the light level and frequently balance, stoop, kneel, crouch, and crawl despite her neck pain." (Tr. at 27.)

The ALJ properly also relied on Plaintiff's daily activities in making her adverse credibility finding in accordance with Craig, 76 F.3d at 595, and 20 C.F.R. § 404.1529(c)(3). In particular, the ALJ noted that Plaintiff exercised regularly during the alleged disability period. "She reported on September 29, 2014, that she walked on the treadmill for 30 minutes and used the stationary bike for 30 minutes, five times per week," even with a reported decline in her exertional capacity due to foot and leg pain. (Tr. at 28, 622.) Plaintiff "also testified that she continues to drive short distances" and "is able to prepare meals," which requires "hand manipulation, fingering, and feeling." (Tr. at 28.)

Lastly, the ALJ relied on opinion evidence when discounting Plaintiff's complaints of disabling symptoms. On May 30, 2013, consultative examiner Dr. Alan Cohen found that Plaintiff had normal neurologic sensation and no muscle tenderness or atrophy. She was able to sit, stand, squat, and ambulate with a steady gait. Dr. Cohen also found that Plaintiff had full muscle strength and the ability to pinch, grasp, and manipulate objects with her hand. However, she had a limited range of motion in her cervical and thoracolumbar spines and could not raise her arms fully overhead. (Tr. at 28, 414-19.) In light of these findings, the ALJ limited Plaintiff to occasional overhead reaching with her right upper extremity. (Tr. at 28.) The ALJ also noted that Dr. Cohen "diagnosed the claimant with status post arthroscopic repair of a torn right shoulder rotator cuff with shoulder and hand syndrome, possibly with

17

secondary gain." (Tr. at 28.) The ALJ noted that "Dr. Cohen did not provide more explanation for his note of possible secondary gain. However, the brief notation was considered and appears to support the determination herein that claimant was not disabled as alleged." (Tr. at 28.)[5] Similarly, both State agency medical consultants opined that Plaintiff could perform light work with further limitations to occasional pushing, pulling, and overhead reaching with the right upper extremity. (Tr. at 28, 77-78. 90-91.) In assigning these opinions substantial weight, the ALJ explained that the "assessments for light work accommodate [Plaintiff's] status post-shoulder surgery, but are not overly restrictive given that [Plaintiff] seems to recover within the expected time frame." (Tr. at 28.) The ALJ further explained that some of the additional postural and manipulative restrictions included in the RFC were also "based on more recent evidence regarding [Plaintiff's] cervical stenosis." (Tr. at 27-28.)

As a final matter, in examining the opinion evidence, the ALJ found it "notable that no treating physician opined that [Plaintiff] was disabled." (Tr. at 28.) Plaintiff now challenges this observation, contending that the ALJ improperly ruled that "because [Plaintiff] did not submit a medical source statement from a treating source that [her treating physicians] believed, as a matter of fact, that Way did not have any functional limitation due to her medical impairments and, moreover, was not disabled." (Pl.'s Br. [Doc. #8] at 10.) However, the ALJ

---

[5] "The National Center for Biotechnology defines secondary gain as:
    [T]he advantage that occurs secondary to stated or real illness. Transition into the sick role may have some incidental secondary gains for patients. Types of secondary gain include using illness for personal advantage, exaggerating symptoms, consciously using symptoms for gain, and unconsciously presenting symptoms with no physiological basis. These symptoms may contribute to the social breakdown syndrome and the patient's choice to remain in the sick role.
https://www.ncbi.nlm.nih.gov/pubmed/10172109 (last visited Feb. 14, 2017)." Mikesell v. Berryhill, 2017 WL 3608239 (D.N.M. Feb. 23, 2017).

did not make any such ruling or assumption. The ALJ simply observed that there were no treating physician opinions that supported the level of disability alleged by Plaintiff. The ALJ is required to consider all of the opinion evidence, and in giving substantial weight to the state agency medical consultants, it was appropriate for the ALJ to note that there were no contradictory opinions from a treating physician. Contrary to Plaintiff's assertions, the ALJ simply did not conclude that Plaintiff's treating physicians therefore believed that Plaintiff did not have any functional limitations due to her medical impairments. Indeed, the ALJ found multiple functional limitations based on the medical treatment records. Ultimately, as set out above, the ALJ provided a thorough review of the record, including objective evidence, treatment notes, opinion evidence, and daily activities, in concluding that Plaintiff's allegations of debilitation symptoms were less than credible. Plaintiff has not shown how this credibility analysis was improper or how the ALJ's credibility determination was unsupported by substantial evidence. To the extent that Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her

decision, explained the reasons for her credibility determination, and supported that explanation with substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #7] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 22nd day of February, 2018.

                                             /s/ Joi Elizabeth Peake
                                           United States Magistrate Judge